Rule 23 order filed
July 29, 2020.
Motion to publish granted
August 25, 2020.

2020 IL App (5th) 190137

NO. 5-19-0137

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| JAMIE L. BRANDT and DARIN BRANDT, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 17-L-34 |
| | ) | |
| PRASHANTH C. SHEKAR, M.D., TIMOTHY J. | ) | |
| CARMODY, M.D., and MID-AMERICA | ) | |
| RADIOLOGY, S.C., | ) | Honorable |
| | ) | Heinz M. Rudolf, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court, with opinion.
Justice Moore concurred in the judgment and opinion.
Presiding Justice Welch dissented, with opinion.

**OPINION**

¶ 1    Defendants, Prashanth C. Shekar, M.D., Timothy J. Carmody, M.D., and Mid-America

Radiology, S.C. (Mid-America), appeal from an order of the circuit court of St. Clair County,

which denied their motion to transfer the medical negligence action filed by plaintiffs, Jamie and

Darin Brandt, to Marion County on the grounds of *forum non conveniens*. For the following

reasons, we reverse and remand with directions.

¶ 2                                          BACKGROUND

¶ 3    The following factual recitation was adduced from the orders, pleadings, affidavits, and

other supporting documents of record. We recite only those facts necessary to the resolution of

this appeal.

1

¶ 4    Jamie presented to St. Mary's Hospital in Marion County, Illinois, for yearly screenings and diagnostic mammograms on August 30, 2012, November 26, 2013, December 15, 2014, and December 18, 2015. The radiological services at St. Mary's Hospital, including Jamie's yearly mammograms, were provided by Mid-America, an Illinois corporation headquartered in Jefferson County, Illinois. Jamie's yearly studies were alternatively interpreted by two licensed radiologists employed by Mid-America, Drs. Shekar and Carmody, at St. Mary's Hospital. In interpreting the study following Jamie's December 18, 2015, mammogram, Dr. Shekar noted a suspicious lesion and referred her for additional testing. A biopsy later revealed invasive ductal carcinoma in Jamie's left breast.

¶ 5    On February 11, 2016, Dr. Merrilee Brandt, a general surgeon located in Marion County, performed surgery on Jamie at St. Mary's Hospital. Jamie then presented to Cancer Care Specialists at St. Mary's Hospital for additional treatment with Dr. Bassam Maalouf, an oncologist. Dr. Maalouf ordered a PET scan to stage Jamie's breast cancer in her left breast on February 24, 2016. The PET scan also revealed evidence of possible cancer in Jamie's right breast.

¶ 6    Following this diagnosis, Jamie sought additional opinions and treatment options with three physicians affiliated with Washington University in St. Louis, Missouri, including Dr. Julie Margenthaler, a breast surgeon; Dr. Jairam Krishnamurthy, an oncologist; and Dr. Keith Brandt, a plastic surgeon. Dr. Margenthaler ultimately performed a bilateral mastectomy with sentinel node biopsies on April 20, 2016, and Jamie consulted with Dr. Keith Brandt for reconstructive surgery of her breast tissue.

¶ 7    After Jamie underwent surgical treatment in St. Louis, she elected to receive chemotherapy and radiation therapy at St. Mary's Hospital in Marion County. This treatment,

which was administered by Dr. Maalouf and Dr. Graeme Fisher, was successfully completed in 2016 and early 2017. In March 2017, Dr. Francisco Xynos performed a laparoscopic total hysterectomy on Jamie in Richmond Heights, Missouri.

¶ 8     On January 31, 2017, prior to the completion of Jamie's treatment, plaintiffs filed a multi-count complaint in the circuit court of St. Clair County, alleging separate causes of action against each defendant for medical negligence. The complaint generally alleged that Drs. Shekar and Carmody negligently failed to timely diagnose and treat Jamie's breast cancer during her yearly screenings and diagnostic mammograms from 2012 to 2015, which caused Jamie to suffer injury and damages. The complaint specified that Dr. Shekar was negligent in interpreting Jamie's mammogram on November 26, 2013, and Dr. Carmody was negligent in interpreting Jamie's mammograms on three occasions: August 30, 2012, December 15, 2014, and December 18, 2015. The complaint further specified that Mid-America was negligent, by and through the acts of Drs. Shekar and Carmody, in providing medical services to Jamie on each of the above-referenced dates. In addition, the complaint alleged that Darin, who was married to Jamie at all relevant times, suffered a loss of consortium due to Jamie's injuries.

¶ 9     On February 16, 2017, the complaint was served on Mid-America's registered agent, attorney Mark J. Ballard, in Jefferson County. Dr. Shekar was served at his personal residence in St. Clair County, and Dr. Carmody was served at his personal residence in Clive, Iowa.

¶ 10     On March 20, 2017, Dr. Shekar filed an answer to plaintiffs' complaint, along with a motion to transfer the case to Marion County on the grounds of *forum non conveniens*. In the answer, Dr. Shekar asserted, as an affirmative defense, that St. Clair County was an inconvenient forum. In the motion to transfer, Dr. Shekar argued that the case should be transferred to Marion County, where plaintiffs resided and the alleged medical negligence occurred. Dr. Shekar

3

recognized that St. Clair County was considered a proper forum under section 2-101 of the Code of Civil Procedure (735 ILCS 5/2-101 (West 2016) ("Except as otherwise provided in this Act, every action must be commenced (1) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose.")), but he claimed that plaintiffs had engaged in forum shopping because they did not reside in St. Clair County and the cause of action did not occur there. Dr. Shekar also argued that an analysis of the relevant private and public interest factors showed that St. Clair County was not a convenient forum for the action, and discovery would show that Marion County was a substantially more convenient forum. Dr. Shekar indicated that he would file a detailed memorandum of law in support of his motion to transfer after conducting discovery. Dr. Carmody and Mid-America subsequently joined in the motion to transfer.

¶ 11    On September 27, 2018, following discovery and several continuances, defendants filed a memorandum in support of the motion to transfer with attachments, which included affidavits on behalf of each defendant and certain discovery responses by both parties. According to defendants, the attachments revealed the following undisputed facts: (1) plaintiffs resided in Marion County; (2) the medical treatment at issue occurred in Marion County; (3) three potential lay witnesses resided in or near Marion County, including Jamie's mother, sister-in-law, and brother-in-law; (4) Dr. Shekar resided in St. Clair County but provided medical services in Marion County, not St. Clair County; (5) Dr. Carmody resided in Iowa but lived at an apartment in Jefferson County when he worked for Mid-America; (6) Dr. Carmody provided medical services in Marion County, not St. Clair County; (7) Drs. Shekar and Carmody were partners and

4

employees of Mid-America; (8) Mid-America was an 11-member radiology group that employed 7 full-time physician radiologists and 4 part-time physician radiologists; (9) Mid-America had a registered agent in Jefferson County; (10) Mid-America provided radiology services in Marion, Bond, Madison, and Jefferson Counties but not in St. Clair County; (11) Jamie received medical treatment in Marion County and St. Louis; and (12) Jamie did not receive medical treatment in St. Clair County.

¶ 12    Based on these facts, defendants argued that a balance of the private and public interest factors favored transfer to Marion County. Specifically, defendants argued that both Drs. Shekar and Carmody spent a considerable portion of their professional time providing medical services at St. Mary's Hospital. According to defendants, St. Mary's Hospital was located 17.5 miles from the Marion County courthouse and 61.3 miles from the St. Clair County courthouse. Defendants also argued that Mid-America's corporate office in Jefferson County was significantly closer to Marion County than St. Clair County. As such, defendants claimed that a trial in Marion County would be less burdensome for defendants to find coverage for their professional medical practice. In addition, defendants argued that most of the potential witnesses were located in Marion County, including Dr. Merrilee Brandt, Dr. Maalouf, Dr. Fisher, and Jamie's primary care physician, Dr. James Schutzenhofer. Defendants also asserted that Jamie had identified three lay witnesses residing in or near Marion County. While acknowledging that Jamie also received treatment from four physicians in St. Louis, defendants asserted that this witness testimony would likely be secured via videotaped evidence deposition. Lastly, defendants asserted that the public interest factors weighed in favor of transfer because St. Clair County had no connection with the alleged medical negligence.

5

¶ 13 On March 8, 2019, plaintiffs filed a response in opposition to defendants' motion to transfer, arguing that the public and private interest factors did not weigh strongly in favor of transfer to Marion County. Plaintiffs specifically argued that defendants were unable to show that Marion County was a more convenient forum because Dr. Shekar resided in St. Clair County, and neither Mid-America nor Dr. Carmody resided in Marion County. Plaintiffs additionally argued that a trial in St. Clair County would be more convenient for several witnesses, including Jamie's medical providers in the St. Louis area. Plaintiffs also pointed out that the offices of the attorneys of record were in St. Clair County and St. Louis.

¶ 14 On March 12, 2019, the circuit court held a hearing on the motion to transfer. After considering the parties' arguments, the court directed plaintiffs' attorney to prepare a written order denying the motion to transfer.

¶ 15 On April 5, 2019, the circuit court entered a 16-page written order denying defendants' motion to transfer based on *forum non conveniens*. At the outset of its analysis, the circuit court recognized that plaintiffs' chosen forum, St. Clair County, was entitled to less deference because plaintiffs did not reside there. However, the court generally concluded that, "[h]ere, not only [have plaintiffs] filed suit where Defendant Dr. Shekar resides, but Defendants fail to meet their burden in demonstrating that the relevant private and public interest factors greatly favor Marion County, requiring transfer." The court then evaluated the relevant private and public interest factors.

¶ 16 First, the circuit court determined that the private interest factors did not strongly weigh in favor of transfer to Marion County. Regarding convenience of the parties, the court determined that defendants had failed to prove that plaintiffs' chosen forum was inconvenient to defendants and that another forum was more convenient to all parties. Specifically, the court

6

rejected defendants' argument that plaintiffs' personal residence in Marion County weighed in favor of transfer, noting that a defendant " 'cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff' " (*Whirlpool Corp. v. Certain Underwriters at Lloyd's London*, 295 Ill. App. 3d 828, 837 (1998)). The court also found "it difficult to believe" that St. Clair County, where Dr. Shekar "sleeps, votes and pays taxes," was inconvenient to him. Moreover, the court noted that, although defendants spend professional time in Marion County and provided services to Jamie there, none of them live there, and the parties and witnesses were scattered throughout different states and counties. As such, the court determined that defendants had failed to prove that St. Clair County was an inconvenient forum.

¶ 17    In considering the ease of access to evidence, the availability of compulsory service of process, and the cost to obtain the attendance of witnesses, the circuit court noted that the case involved medical negligence, thus, the primary sources of evidence would "presumably come from [Jamie's] medical records as well as opinion and expert testimony," which the parties had no difficulty obtaining. Next, after determining that witnesses were scattered throughout Illinois and Missouri, given that Jamie's treatment was not centrally located, the court found that some of the potential witnesses would be inconvenienced by either forum, and the Missouri witnesses would remain outside the compulsory service power of the court. Moreover, Jamie had not determined who would testify, but she stated that her three family members would not feel inconvenienced if the case remained in St. Clair County. Regardless of the forum, the court noted that recent technological advances allowed both parties to take evidence depositions of witnesses and access witness testimony much easier. The court also noted the parties agreed that the possibility of viewing the premises was not at issue, given the dispute was limited to a claim of medical negligence.

7

¶ 18    Lastly, in considering the final private interest factor, all other practical considerations, the circuit court found that expert witnesses would likely be called to testify regarding the alleged medical negligence. The court presumed that most of these expert witnesses would have to travel from out of state, "which would certainly make St. Clair County more convenient to travel to as opposed to Marion County since [the] majority would likely be traveling through Lambert Airport" in St. Louis. While acknowledging that little weight should be given to the location of the attorneys, the court noted that the offices of the attorneys of record were located in St. Clair County and St. Louis.

¶ 19    After analyzing each of the private interest factors, the circuit court determined that defendants had failed to show that St. Clair County was inconvenient to them and Marion County was more convenient to all parties, especially given that Dr. Shekar resided in St. Clair County and no named defendant resided in Marion County. The court also found that the witnesses were "located throughout the St. Louis Metropolitan Area and State of Illinois," and defendants had failed to show "a serious impediment to accessing or presenting evidence" in St. Clair County. Thus, the relevant private interest factors did not weigh in favor of transfer to Marion County.

¶ 20    Next, the circuit court determined that the public interest factors did not weigh in favor of transfer to Marion County. Specifically, with regard to administrative concerns, the court acknowledged defendants' presentation of various statistics showed the number of cases filed in St. Clair County nearly doubled those filed in Marion County in 2016. However, the court did "not foresee it being an issue," especially considering that courts have generally found this factor insignificant. As to the administrative and technological resources, the court found that "a trial of this magnitude" would be conducted easily in a St. Clair County courtroom, "where judges and

8

administrative staff are accustomed to handling trials of this length and complexity, and where updated monitors and the availability of internet access allow for a quick and easy presentation of evidence."

¶ 21 With respect to the imposition of jury duty on the residents of the pending forum, the circuit court initially acknowledged that jurors in Marion County would have an interest in the case because the alleged malpractice occurred there. However, Dr. Shekar was a resident of St. Clair County. As such, the "jurors have just as much of a right, if not more, when one of the named Defendants is a resident of their respective county."

¶ 22 With regard to the interest in deciding controversies locally, the circuit court found that St. Clair County had "a legitimate interest in litigating controversies involving its residents." The court emphasized that, as a resident of St. Clair County, Dr. Shekar "pays taxes, votes and maintains other privileges in the County," and, therefore, the court concluded that St. Clair County had an interest in the case. After analyzing the relevant public interest factors, the court determined that transfer to Marion County was not warranted.

¶ 23 In conclusion, the circuit court reiterated that defendants had "failed to meet the initial threshold that Plaintiff's chosen forum is inconvenient to the Defendants and that another forum is more convenient to all parties." The court stated the following:

> "Here, Defendant Dr. Shekar is a resident of St. Clair County where he lives, pays taxes and maintains certain rights; the parties and witnesses are not centralized, but rather scattered throughout Illinois and Missouri; traveling to St. Clair County would be more convenient for any out of state experts, witnesses, as well as the attorneys of record; evidence is being stored in the offices of the attorneys of record which is [*sic*] located in St. Clair County and St. Louis; viewing the premises is not an issue; court congestion is not an issue; jurors have an interest in deciding cases involving one of its residents."

9

Based on its findings, the court concluded that a balance of the private and public interest factors "demonstrated that this is not a case of exceptional circumstances where the interests of justice require transfer."

¶ 24   On April 10, 2019, this court granted defendants' motion for extension of time to file a petition for leave to appeal. On May 9, 2019, defendants filed their petition for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(2) (eff. Oct. 1, 2019), and this court granted leave to appeal on June 26, 2019.

¶ 25                              ANALYSIS

¶ 26   The sole question on appeal is whether the circuit court abused its discretion in denying defendants' motion to transfer the case to Marion County on the grounds of *forum non conveniens*. A circuit court is vested with a considerable amount of discretion in determining whether to grant a *forum non conveniens* motion. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441 (2006). "A trial court's decision on a *forum non conveniens* motion will be reversed only if it can be shown that the trial court abused its discretion in balancing the various factors at issue." *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 169 (2005). An abuse of discretion occurs only where no reasonable person would take the view adopted by the court. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003).

¶ 27   "*Forum non conveniens* is an equitable doctrine founded in considerations of fundamental fairness and the sensible and effective administration of justice." *Langenhorst*, 219 Ill. 2d at 441. The doctrine allows circuit courts to decline jurisdiction when a trial in a different forum would better serve the ends of justice. *Id*. "Every request for transfer based upon *forum non conveniens* must be decided pursuant to an 'individualized, case-by-case

10

consideration of convenience and fairness.' " *Gridley*, 217 Ill. 2d at 168 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

¶ 28   In considering whether to grant or deny a motion to transfer based on *forum non conveniens*, a circuit court must balance the private interest factors that affect the litigants and the public interest factors that affect the administration of the courts. *Dawdy*, 207 Ill. 2d at 172. When considering which is the more appropriate forum, no "single factor is given conclusive effect or central emphasis." *Gundlach v. Lind*, 353 Ill. App. 3d 677, 682 (2004) (citing *Dawdy*, 207 Ill. 2d at 180). The burden is on a defendant to show that the balance of the relevant public and private interest factors strongly favors transfer. *Dawdy*, 207 Ill. 2d at 172. A circuit court must evaluate the totality of the circumstances in determining whether that burden has been met. *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 17.

¶ 29   The private interest factors include: (1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; (3) the availability of compulsory process to secure attendance of unwilling witnesses; (4) the cost to obtain attendance of willing witnesses; (5) the possibility of viewing the premises, if appropriate; and (6) all other practical considerations that make a trial easy, expeditious, and inexpensive. *Dawdy*, 207 Ill. 2d at 172. The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the unfairness of burdening citizens in an unrelated forum with jury duty; and (3) the interest in having local controversies decided locally. *Id*. at 173.

¶ 30   In addition to these factors, courts must consider the plaintiff's substantial right to select the forum. *Id*. "It is generally assumed that the plaintiff's choice of forum is convenient, and unless the balance of the relevant factors strongly favors a dismissal, the plaintiff's choice should rarely be disturbed." *Shaw v. Haas*, 2019 IL App (5th) 180588, ¶ 19. "However, when the

11

plaintiff is foreign to the chosen forum and when the action giving rise to the litigation did not occur in the chosen forum, the plaintiff's choice of forum is accorded less deference" (*id.* (citing *Fennell*, 2012 IL 113812, ¶ 18)) and the " 'assumption [of convenience] is no longer reasonable' " (*Dawdy*, 207 Ill. 2d at 174 (quoting *Certain Underwriters at Lloyds, London v. Illinois Central R.R. Co.*, 329 Ill. App. 3d 189, 196 (2002))). Moreover, " '[w]hen the plaintiff is foreign to the forum chosen and the action that gives rise to the litigation did not occur in the chosen forum, *** it is reasonable to conclude that the plaintiff engaged in forum shopping to suit his individual interests, a strategy contrary to the purposes behind the venue rules.' " *Dawdy*, 207 Ill. 2d at 174 (quoting *Illinois Central R.R. Co.*, 329 Ill. App. 3d at 196). "A plaintiff's right to choose a forum 'cannot be permitted to override the public interest in, and need for, an orderly, efficiently operated judicial system.' " *Id.* at 175 (quoting *Espinosa v. Norfolk & Western Ry. Co.*, 86 Ill. 2d 111, 123 (1981)).

¶ 31    Applying the above principles to the present case, we conclude that the circuit court abused its discretion in denying defendants' motion to transfer from St. Clair County to Marion County. In our view, the record clearly demonstrates that the litigation has no practical connection to St. Clair County and a balance of the relevant factors strongly favors transfer to Marion County. Despite our conclusion, we commend the circuit court on providing a written order that sets forth detailed findings and a thorough analysis of the relevant factors. See *First American Bank v. Guerine*, 198 Ill. 2d 511, 520-21 (2002) (directing circuit courts to carefully consider *forum non conveniens* motions and to leave a better record of their analyses so as to allow reviewing courts to make informed decisions and develop a guiding body of law).

¶ 32    In the circuit court's 16-page order, it initially considered plaintiffs' interest in choosing the forum to file their complaint. Before considering the private and public interest factors,

12

courts should determine "how much deference to give a plaintiff's choice of forum." *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 657 (2009). For instance, a plaintiff's chosen forum is entitled to less deference in a *forum non conveniens* analysis when the plaintiff chooses a forum other than the forum where he or she resides, or the cause of action arose. *Guerine*, 198 Ill. 2d at 517. Similar to this court's recent decision in *Kuhn v. Nicol*, 2020 IL App (5th) 190225, ¶ 19, where the plaintiffs' choice of forum of St. Clair County was afforded less deference because the plaintiffs resided in Clinton County, and the action giving rise to litigation occurred in Clinton County; here, plaintiffs' chosen forum of St. Clair County is afforded less deference, given that plaintiffs reside in Marion County, and the alleged medical negligence occurred in Marion County. Thus, we conclude that plaintiffs' chosen forum, St. Clair County, is owed less deference.

¶ 33    While a plaintiff's chosen forum will prevail in most instances when venue is proper, a court should grant a motion to transfer if "the litigation has no practical connection to the forum, and a defendant establishes the necessary showing" under the *forum non conveniens* doctrine. *Peile v. Skelgas, Inc.*, 163 Ill. 2d 323, 335-36 (1994). Here, it is undisputed that venue is proper in St. Clair County, as one of the three defendants, Dr. Shekar, resides there. See 735 ILCS 5/2-101 (West 2016). We find it significant, however, that Dr. Shekar's personal residence, while sufficient to make venue proper in St. Clair County, was in no way connected to the medical negligence alleged in plaintiffs' complaint.

¶ 34    It is undisputed that the alleged negligent interpretation of Jamie's mammograms by Drs. Shekar and Carmody, which was the basis for the alleged medical negligence, occurred at St. Mary's Hospital in Marion County. In fact, aside from Dr. Shekar's residence and the location of plaintiffs' attorney's office, our review of the record leads to the conclusion that St. Clair County

13

has absolutely no practical connection to this litigation. None of the named defendants provide medical services or treatment in St. Clair County, none of the treatment Jamie received for her breast cancer occurred in St. Clair County, and none of the potential witnesses are located in St. Clair County. With this in mind, we turn to the circuit court's analysis of the private and public interest factors.

¶ 35   The circuit court first found that the private interest factors, which include (1) convenience of the parties, (2) ease of access to the evidence, (3) availability of compulsory process, (4) cost to obtain attendance of willing witnesses, (5) possibility of viewing the premises, and (6) all other practical considerations, did not strongly weigh in favor of transfer to Marion County. As to the convenience of the parties, the court found that defendants had failed to show that St. Clair County was inconvenient to them and that Marion County was a more convenient forum for all parties. In support, the court found it "difficult to believe" that Dr. Shekar would be inconvenienced by a trial in St. Clair County, which was his county of residence, and that no named defendant resided in Marion County. Defendants argue, and we agree, that the court placed undue weight on Dr. Shekar's place of residence in forming its conclusion.

¶ 36   As noted, although Dr. Shekar's place of residence makes venue proper in St. Clair County (735 ILCS 5/2-101 (West 2016)), this fact alone is not dispositive in a *forum non conveniens* analysis. Instead, "the inquiry in a *forum non conveniens* analysis requires a court to look beyond the statutory criteria for venue and to determine the relative convenience of competing forums." *Bruce v. Atadero*, 405 Ill. App. 3d 318, 325 (2010). Because Dr. Shekar's personal residence had no connection to the medical negligence alleged against him, we find this fact less significant in this case. Given the circuit court's repeated references to this fact in its

14

consideration of the first private interest factor, we find the court improperly focused on this fact and failed to properly consider the convenience of all other parties. Accordingly, the record demonstrates that plaintiffs reside in Marion County. While defendants are precluded from asserting that plaintiffs would be inconvenienced by a trial in St. Clair County, it is clear that Marion County would be a convenient forum for plaintiffs to litigate this action.

¶ 37 Defendants filed a motion to transfer and subsequently filed a memorandum in support of the motion to transfer, asserting that a trial in St. Clair County would be inconvenient to them due to the nature of their practice, and that a trial in Marion County would be more convenient to all parties. Defendants specifically asserted that a trial in Marion County would be less burdensome on Mid-America in terms of securing practice coverage during the trial. The record shows that Mid-America has a registered agent in Jefferson County, and the radiology services at issue were provided by Mid-America at St. Mary's Hospital in Marion County. According to an affidavit prepared by Mid-America's president, Mid-America's professional medical practice consists of seven full-time physician radiologists, including Drs. Shekar and Carmody, and four part-time physician radiologists. Mid-America's president further attested that, in addition to St. Mary's Hospital in Marion County, Mid-America provides radiological services at hospitals located in Jefferson, Bond, and Madison Counties but not in St. Clair County.

¶ 38 The record shows that Dr. Carmody resides in Iowa but stays in an apartment in Mt. Vernon, Jefferson County, while working for Mid-America. As noted, Dr. Shekar resides in St. Clair County. Both Drs. Shekar and Carmody attested in their respective affidavits that they provided medical services in Marion County, not St. Clair County. The record demonstrates that both Drs. Shekar and Carmody spend a considerable portion of their time treating patients in Marion County. Both Mid-America's headquarters and Dr. Carmody's apartment are located 27

15

miles from the Marion County courthouse but 67.6 miles from the St. Clair County courthouse, while St. Mary's Hospital is located 17.6 miles from the Marion County courthouse but 49.6 miles from the St. Clair County courthouse. Google Maps (http://www.google.com/maps (last visited May 29, 2020)); see *Dawdy*, 207 Ill. 2d at 177; see also *Hoskin v. Union Pacific R.R. Co.*, 365 Ill. App. 3d 1021, 1024-25 (2006) (permitting judicial notice of matters, such as distances, when the matters are capable of instant and unquestionable demonstration). Thus, the record shows that both Mid-America and Dr. Carmody have no apparent ties to St. Clair County but are familiar with, and connected to, Marion County. In addition, a trial in Marion County would require less travel time for Dr. Carmody and would ease the burden in terms of securing practice coverage for Mid-America. Thus, we find a trial in St. Clair County would be inconvenient for two of the three defendants, and a trial in Marion County would be convenient for all parties.

¶ 39    In sum, we conclude that the circuit court abused its discretion with regard to its findings in evaluating the first private interest factor. After placing less weight on the location of Dr. Shekar's personal residence and considering the convenience of *all* parties, we find the first private interest factor weighs in favor of Marion County.

¶ 40    The circuit court also found that the second private interest factor, the relative ease of access to sources of testimonial and documentary evidence, did not favor transfer because the witnesses were scattered throughout different counties in Illinois and Missouri. The primary sources of evidence in this medical negligence action are Jamie's medical records, which the parties' respective attorneys currently possess, and testimony from the medical witnesses. Contrary to the court's determination that the witnesses were scattered throughout different counties in Illinois and Missouri, the record clearly demonstrates that Jamie's treatment providers were located in Marion County and St. Louis. The record shows that much of Jamie's

16

care and treatment was provided by four physicians in Marion County, including Dr. Merrilee Brandt, who performed the initial surgical treatment on Jamie at St. Mary's Hospital following her diagnosis, Dr. Maalouf, who provided Jamie with an initial opinion regarding the stage of her breast cancer and later treated Jamie by way of chemotherapy and radiation therapy, Dr. Fisher, who also treated Jamie by way of chemotherapy and radiation therapy, and Dr. Schutzenhofer, Jamie's primary care physician.

¶ 41    Due to the nature of their profession, it would be easier to access live testimony from these witnesses if the cause were transferred to a courthouse located closer to their offices in Marion County. In addition, Jamie identified three potential lay witnesses residing in or near Marion County. The circuit court disregarded the location of these potential witnesses, noting plaintiffs' contention in their brief that these witnesses would not be inconvenienced by a trial in St. Clair County. We are unpersuaded by plaintiffs' self-serving assertion, as these witnesses are not parties to the action and plaintiffs have not provided affidavits from these witnesses attesting to this fact. Consequently, for these seven witnesses, the more convenient forum is Marion County.

¶ 42    The record also shows that Jamie received care and treatment from four physicians located in the St. Louis area: Dr. Krishnamurthy, who provided a second opinion consultation; Dr. Margenthaler, who performed a bilateral mastectomy on Jamie; Dr. Keith Brandt, who performed breast reconstruction surgery; and Dr. Xynos, who performed a hysterectomy. Procuring the live testimony of the Missouri providers would likely be easier in St. Clair County, which is undoubtedly closer to these witnesses than Marion County. Google Maps (http://www.google.com/maps (last visited Apr. 7, 2020)); see *Mowen v. Illinois Valley Supply*

17

*Co.*, 257 Ill. App. 3d 712, 716 (1994) (medical providers in St. Louis are more likely to travel to Edwardsville than to Jerseyville to testify because of the mileage differential).

¶ 43    The circuit court also found that unknown expert witnesses would presumably be traveling from outside Illinois through the St. Louis airport to provide unknown testimony at trial in St. Clair County. Because plaintiffs have not identified, and the record fails to reveal, any experts that would require travel through the St. Louis airport, this court cannot confirm their locations or the corresponding ease of access to their testimony in conjunction with travel to either forum. Moreover, the court was not free to speculate about the possible inconvenience of an unnamed group of witnesses who would be traveling from unknown locations to provide unspecified testimony. See *Brant v. Rosen*, 373 Ill. App. 3d 720, 728 (2007) ("The trial court was not free to speculate about the possible inconvenience to a group of unnamed witnesses who would have to travel from unknown locations *** to give unspecified testimony ***."). Even assuming, *arguendo*, that the experts were disclosed in the record, we would give little weight to the location of such experts. See *Fennell*, 2012 IL 113812, ¶ 33 (according significance to the location of plaintiff's chosen expert witnesses would allow plaintiffs to "frustrate the *forum non conveniens* principle" by choosing experts who live in counties that are not otherwise convenient); see also *Eads v. Consolidated R. Corp.*, 365 Ill. App. 3d 19, 32 (2006) (" 'a compensated expert would be more inclined to testify wherever instructed' " (quoting *Hulsey v. Scheidt*, 258 Ill. App. 3d 567, 577 (1994))).

¶ 44    In sum, the ease of access to Jamie's medical records favors neither forum. We find the circuit court abused its discretion in weighing the testimonial evidence where seven witnesses are located in or near Marion County and only four are located in St. Louis. We also note, as did the circuit court, that evidence depositions of the Missouri physicians would be equally

18

accessible to all parties and likely obviate the need for live testimony from these physicians. See *Roberts v. Illinois Power Co.*, 311 Ill. App. 3d 458, 465 (2000) (noting that the use of evidence depositions might obviate the need for doctors to testify at trial). Thus, we find this factor weighs in favor of Marion County.

¶ 45 The circuit court found, and we agree, that the availability of compulsory process to secure the attendance of unwilling witnesses favored neither forum, as all disclosed witnesses residing in Illinois are subject to subpoena in both forums, and the four Missouri physicians are not subject to subpoena in Illinois. See *Fennell*, 2012 IL 113812, ¶ 34. With regard to the cost of obtaining the attendance of unwilling witnesses, the record demonstrates that a majority of the witnesses reside closer to Marion County than St. Clair County. The overall cost to travel to each forum correlates with the number of witnesses that would be required to travel to each forum. The distance between Marion County courthouse and St. Clair courthouse is 62.4 miles. See Google Maps (http://www.google.com/maps (last visited May 29, 2020)). While this difference in mileage is not significant enough to result in a vast difference in travel cost, it is worth observing that a greater number of witnesses would have to travel farther to St. Clair County than Marion County. Accordingly, we find this factor weighs in favor of Marion County.

¶ 46 As to the possibility of viewing the site of injury, defendants conceded that this would be a "non-issue" at a trial involving medical negligence. We agree that viewing of the premises is unlikely in a medical malpractice case.

¶ 47 Regarding all other practical considerations that make a trial easy, expeditious, and inexpensive, the circuit court observed that plaintiffs' counsel maintained a professional office in St. Clair County. While this may slightly weigh in favor of St. Clair County, the court recognized, and we agree, that little weight should be accorded to the location of the parties'

19

attorneys. See *Boner v. Peabody Coal Co*., 142 Ill. 2d 523, 534 (1991) (while a circuit court may consider location of parties' attorneys in determining a *forum non conveniens* motion, little weight should be accorded to it). Viewing the private interest factors as a whole, we find that such factors favor Marion County over St. Clair County.

¶ 48    We now turn our attention to the circuit court's determination that the public interest factors, which include (1) court congestion and administrative concerns, (2) interest in deciding controversies locally, and (3) imposition of jury duty on residents of the chosen forum, did not warrant transfer to Marion County. As to administrative concerns, statistical data shows that the average delay in disposing of large civil cases via trial in St. Clair County is 57.8 months (see Illinois Courts Statistical Summary 2017, https://courts.illinois.gov/SupremeCourt/AnnualReport/2017/2017_Statistical_Summary_Final. pdf). Statistical data also shows that St. Clair County, in comparison to Marion County, had more than 10 times the number of large civil cases filed in 2017 and only 11 cases were disposed of by trial. See *id*. Although Marion County had a similar percentage rate of settlements in 2017 as St. Clair County, Marion County did not have any large civil cases disposed of by trial. *Id*. In 2016, however, Marion County had one large civil case disposed of by trial, and the timeline from filing to verdict was only 18.6 months, more than 39 months faster than the average timeline in St. Clair County (see Illinois Courts Statistical Summary 2016, https://courts.illinois.gov/SupremeCourt/AnnualReport/2016/2016_Statistical_Summary_Final.p df). Thus, considering that large civil cases reach trial substantially faster in Marion County and the statistical data above demonstrates the likelihood of docket congestion in St. Clair County, this public interest factor favors Marion County.

¶ 49 Contrary to the circuit court, we find the two remaining public interest factors, the local interest in local controversies and the imposition of jury duty upon the residents of the pending forum, strongly weigh in favor of Marion County. In considering these two factors, the court, again, placed undue weight on Dr. Shekar's residence in St. Clair County. Although the location of the parties' respective residences may be relevant in considering the private interest factors, the location of the injury giving rise to the litigation is the most significant factor in giving any county a local interest. We reiterate, here, that the alleged medical negligence occurred at St. Mary's Hospital in Marion County; plaintiffs reside in Marion County; two of the three defendants have no connection whatsoever to St. Clair County, and all three defendants provide medical services in Marion County; a substantial portion of Jamie's subsequent medical care took place in Marion County; and Drs. Shekar and Carmody treat patients in Marion County, and they do not provide medical services in St. Clair County.

¶ 50 Given these facts, we find the residents of Marion County clearly have a strong public interest in this litigation, given the plaintiffs reside in Marion County and the alleged medical malpractice and circumstances related thereto occurred in Marion County. As such, similar to the circumstances in *Nicol*, 2020 IL App (5th) 190225, ¶ 17 (this court determined the controversy at issue was "local to Clinton County that would be of interest to the citizens of Clinton County who rely on the defendants for their medical treatment"); here, the alleged malpractice occurred at a hospital in Marion County, thus, the citizens of Marion County have an interest in the controversy, given that they would rely on defendants for medical treatment. Based on the foregoing, it would be unfair to burden the citizens of St. Clair County with jury duty, given the action neither arose there nor had any relation to that county, aside from Dr. Shekar's personal

21

residence being in St. Clair County. See *id.* ¶ 18. Accordingly, the public interest factors strongly weigh in favor of Marion County.

¶ 51    In conclusion, we find that St. Clair County has no practical connection to this litigation and that a balance of the relevant private and public interest factors strongly favors transfer to Marion County, which enjoys a predominant connection this litigation. Therefore, we hold that the circuit court abused its discretion in denying defendants' motion to transfer to Marion County.

¶ 52                                   CONCLUSION

¶ 53    For the foregoing reasons, we reverse the circuit court's April 5, 2019, order denying defendants' motion to transfer on the basis of *forum non conveniens* to Marion County. The cause is remanded with directions for the court to grant the motion to transfer, pursuant to Illinois Supreme Court Rule 187(c)(1) (eff. Jan. 1, 2018).

¶ 54    Reversed and remanded with directions.

¶ 55    PRESIDING JUSTICE WELCH, dissenting:

¶ 56    I respectfully dissent with the majority as I do not believe the trial court abused its discretion in denying the defendants' motion to transfer based on the doctrine of *forum non conveniens*. The court is vested with a considerable amount of discretion in determining whether to grant a *forum non conveniens* motion. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441 (2006). However, that discretion should be exercised only in exceptional circumstances where the interests of justice require a trial in a more convenient forum. *First American Bank v. Guerine*, 198 Ill. 2d 511, 520 (2002). "A trial court's decision on a *forum non conveniens* motion will be reversed only if it can be shown that the trial court abused its discretion in balancing the various factors at issue." *Gridley v. State Farm Mutual*

22

*Automobile Insurance Co.*, 217 Ill. 2d 158, 169 (2005). An abuse of discretion occurs only where no reasonable person would take the view adopted by the court. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003).

¶ 57    The facts in this case do not present an exceptional circumstance warranting transfer. As the trial court pointed out in its detailed decision, it was reasonable to deny a motion for transfer based on the doctrine of *forum non conveniens* where the pleadings were filed in a forum in which a defendant resides, and where no factors exceptionally favor a transfer. In fact, even as the majority recognizes, there are several factors that have no bearing on this case. The residency of a defendant, however, along with the burden placed on the defendants in bringing the motion, the initial deference given to the plaintiff's choice of forum, and the broad discretion invested in the trial court all indicate that the court's denial of the motion was not an abuse of discretion. The majority does not adhere to the limitations of this court under the standard of review. Instead, it conducts what reads as a *de novo* review of the facts and factors. This court should not substitute its opinion for that of the trial court. The majority recognizes that the trial court did a very detailed and thorough analysis of the factors. However, because it disagrees with the lower court's reasonable conclusion, they effectively lower our standard of review in order to reverse. I find its analysis improper and would therefore defer to the trial court and affirm.

2020 IL App (5th) 190137

NO. 5-19-0137

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

JAMIE L. BRANDT and DARIN BRANDT,        )    Appeal from the
                                          )    Circuit Court of
          Plaintiffs-Appellees,           )    St. Clair County.
                                          )
v.                                        )    No. 17-L-34
                                          )
PRASHANTH C. SHEKAR, M.D., TIMOTHY J.     )
CARMODY, M.D., and MID-AMERICA            )
RADIOLOGY, S.C.,                          )    Honorable
                                          )    Heinz M. Rudolf,
          Defendants-Appellants.          )    Judge, presiding.

_____

**Rule 23 Order Filed:**       July 29, 2020
**Motion to Publish Granted:**  August 25, 2020
**Opinion Filed:**             August 25, 2020

_____

**Justices:**       Honorable John B. Barberis, J.

                   Honorable James R. Moore, J., concurring, and
                   Honorable Thomas M. Welch, P.J., dissenting

_____

**Attorneys**      Thomas J. Smith, Michael E. Donelson, Margaret D. Gentzen, Fox Galvin,
**for**            LLC, 1 S. Memorial Drive, 12th Floor, St. Louis, MO 63102
**Appellants**

_____

**Attorneys**      Colleen C. Jones, Leah A. Captain, Cook, Bartholomew, Shevlin, Cook &
**for**            Jones, LLP, 12 W. Lincoln Street, Belleville, IL 62220
**Appellees**

_____