No. 2--00--1396

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

CERTAIN UNDERWRITERS AT LLOYD'S, ) Appeal from the Circuit 

LONDON; COMMERCIAL UNION           ) Court of Lake County.

ASSURANCE COMPANY, PLC; and )

INTERNATIONAL INSURANCE COMPANY, ) 

Indiv. and as Successor in     )

Interest to International          )

Surplus Lines Insurance Company,   )

          )

Plaintiffs-Appellees,         )

                                   )

v.                                 ) No. 00--MR--130

                                   )

ILLINOIS CENTRAL RAILROAD COMPANY, ) 

Indiv. and as Successor in    )

Interest to The Gulf, Mobile and   ) 

Ohio Railroad Company,             )

                                   )

Defendant-Appellant          )

                                   )

(Admiral Insurance Company; )

American Centennial Insurance      )

Company; American Home Assurance )

Company; American Reinsurance      ) 

Company; Audubon Indemnity Company;)

Casualty Insurance Company; )

Century Indemnity Company, as      )

Successor to both Cigna Specialty  )

Insurance Company, f/k/a )

California Union Insurance Company,)

and to CCI Insurance Company,      ) 

Successor to Insurance Company of  )

North America; Columbia Casualty   )

Company; Continental Casualty      )

Company; Employers Insurance of    ) 

Wausau; Employers Mutual Casualty  )

Company; Federal Insurance Company;) 

Fireman's Fund Insurance Company;  ) 

First State Insurance Company;     ) 

General Reinsurance Corporation;   )

Granite State Insurance Company;   )

Harbor Insurance Company; The      )

Home Insurance Company; Insurance  )

Company of the State of            ) 

Pennsylvania; Interstate           ) 

Reinsurance Corporation, a/k/a     )

Interstate Indemnity       )

Company; Landmark Insurance        ) 

Company; Lexington Insurance       )

Company; National Surety           )

Corporation; National Union Fire   )

Insurance Company of Pittsburgh,   ) 

Pennsylvania; Nationwide Mutual    )

Insurance Company; Northeastern )

Fire Insurance Company of ) 

Pennsylvania; Old Republic ) 

Insurance Company; Reliance    )

Fire and Accident Insurance )

Corporation, Ltd.; Royal Insurance )

Company; Stonewall Insurance       )

Company; Transportation Mutual ) 

Insurance Company; Travelers )

Casualty and Surety Company of     ) 

America, as Successor to Aetna     ) 

Casualty and Surety Company; Union ) 

Atlantique D'Assurances, S.A.;    ) Honorable 

and Yosemite Insurance Company,    ) Barbara C. Gilleran Johnson,

Defendants). ) Judge, Presiding.              _________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:
 

Defendant Illinois Central Railroad Company (Illinois Central) appeals the trial court's denial of its motion to transfer venue from the circuit court of Lake County to the circuit court of Cook County pursuant to the doctrine of 
forum non conveniens
.  We reverse and remand.

The action pending in Lake County involves insurance coverage for environmental contamination in 35 railroad sites owned and operated by defendant Illinois Central located in nine states, including Illinois.  In an amended complaint filed in Lake County, Illinois, Certain Underwriters at Lloyds, London (Lloyds), joined by 94 insurance companies, seek a declaratory judgment that there is no coverage for environmental claims concerning 35 of Illinois Central's railroad sites and that there is no duty to defend or indemnify Illinois Central with respect to the environmental claims.  

I.  BACKGROUND

In 1850, Illinois Central was formed as a Delaware corporation for north-south railroad operations with headquarters in Chicago, Illinois.  The Gulf, Mobile & Ohio Railroad Company (GM&O), formed in the mid-1800s and headquartered in Mobile, Alabama, operated railroad transportation facilities in the southern United States.  In 1972, GM&O merged with Illinois Central.  The combined railroad operated in 13 states, with a northern terminus in Chicago and a southern terminus in Mobile, Alabama.  No rails or operations of Illinois Central premerger or postmerger with GM&O were located in Lake County, which is north of the railroad's northern terminus in Chicago.  

From April 1, 1948, to June 1, 1985, Illinois Central and its predecessors purchased insurance policies from each of the defendant insurers for liability incurred as a result of its operations.  The insurance policies were purchased by executives in Chicago and Mobile, Alabama.  Illinois Central's broker for purchase of the policies was the Chicago office of Rollins Burdick Hunter, thereafter acquired by AON corporation, headquartered in Chicago.  None of the policies were purchased or delivered in Lake County, Illinois.  

Lloyds, London is an underwriter of insurance policies issued through the London insurance market.  Plaintiff Stonewall Insurance Company is an Ohio corporation with its principal place of business in Ohio. The collective plaintiffs--Lloyds, London;  Stonewall Insurance Company; and 91 London market insurers--subscribed to certain liability insurance policies issued to Illinois Central and/or GM&O by defendants.

Illinois Central received notice of suits from governmental agencies, including the Environmental Protection Agency, that operations at various facilities in numerous states resulted in the release of hazardous environmental contaminants.  On October 28, 1999, Illinois Central filed suit in the circuit court of Mobile County, Alabama, seeking a declaration of its right to coverage for the environmental losses.  Identified as defendants in the Alabama suit were Lloyds, London, International Insurance Company, and 150 additional insurance companies.

II.  THE LAKE COUNTY INSURANCE COVERAGE LITIGATION

On February 15, 2000, plaintiffs Lloyds, London; Commercial Union; and International Insurance Company filed a declaratory judgment action in the circuit court of Lake County against Illinois Central and 33 insurance companies (see appendix A).  The complaint sought a declaration that there is no insurance coverage with respect to the environmental claims arising in 35 sites in 9 states, including Alabama, Arkansas, Illinois, Iowa, Louisiana, Mississippi, Missouri, Tennessee, and Virginia, and that plaintiffs have no duty to defend or indemnify Illinois Central with respect to the environmental claims arising in 35 sites in 9 states.  The sites of environmental claims in Illinois are located in Cook County, Greene County, McLean County, Madison County, Morgan County, and St. Clair County.  None of the sites are located in Lake County.  The complaint alleges that venue is proper in Lake County because Illinois Central does business in Lake County and certain defendant insurers have offices in Lake County or are doing business in Lake County.  

On April 18, 2000, plaintiffs amended the complaint to change the status of Stonewall Insurance Company from defendant to plaintiff, to drop Commercial Union as a plaintiff, and to add 91 additional insurance companies as plaintiffs (see appendix B).  Again, the amended complaint identified Illinois Central and 32 insurance companies as defendants and sought a declaration of no insurance coverage with respect to the environmental claims arising in 35 sites in 9 states.  While this appeal was pending, Illinois Central moved to voluntarily dismiss plaintiff International Insurance Company, individually and as successor-in-interest to International Surplus Lines Insurance Company, with prejudice.  The motion was granted, leaving Lloyds and the remaining insurance companies listed in appendix B as the plaintiffs. 

Illinois Central moved to dismiss the Lake County declaratory judgment action pursuant to section 2--619(a)(3) of the Code of Civil Procedure (the Code) (735 ILCS 5/2--619(a)(3) (West 2000)).  The motion asserted that the Lake County action was duplicative of the action filed by Illinois Central in Alabama involving the same parties, same cause of action, the same insurance policies, and the same loss.  In denying Illinois Central's motion to dismiss, the trial court found that there were more contacts, track, policies, sites, parties, and overall economic interest in maintaining the coverage action in Illinois.  Illinois Central's motion for certification of the trial court's ruling pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308) was denied.  This opinion is not concerned with the correctness of the court's denial of the section 2--619(a)(3) motion.  Nothing in this opinion should be deemed to preclude the filing of a new section 2--619(a)(3) motion based upon additional facts regarding the status of litigation in the Alabama court.

On September 27, 2000, Illinois Central filed a motion to transfer venue of the declaratory judgment action from the circuit court of Lake County to the circuit court of Cook County pursuant to the doctrine of 
forum non conveniens
.  A hearing was held on November 2, 2000.  The trial court denied Illinois Central's motion to transfer, finding that either Cook or Lake County would be an appropriate forum and stating that Cook County had a strong interest in the litigation but that it could not conclude that Lake County lacked interest in the litigation.

On December 4, 2000, Illinois Central filed a petition in this court for leave to appeal the trial court's denial of its motion to transfer venue pursuant to Supreme Court Rule 306(a)(2) (166 Ill. 2d R. 306(a)(2)).  The petition was granted on February 8, 2001.

III.  ANALYSIS

The sole issue is whether the trial court abused its discretion in denying Illinois Central's motion to transfer venue pursuant to the doctrine of 
forum non conveniens
.  Illinois Central takes issue with plaintiffs' choice of forum in Lake County and asserts that this case represents "the most egregious example of court-sanctioned forum shopping that could ever be envisioned," in that the action was filed in an Illinois county in which Illinois Central never conducted operations, transacted business, or purchased an insurance policy.  In the view of Illinois Central, a consortium of over 100 insurance companies successfully realigned the parties to eliminate the possibility of filing a motion to transfer venue for filing in the wrong venue and filed this action in Lake County for the self-serving purpose of moving the underlying coverage dispute, originally filed in Alabama by Illinois Central, a jurisdiction perceived to be unfavorable to insurance defenses, to a jurisdiction and venue perceived to be favorable to insurance defenses.  Illinois Central claims that the result of these "procedural machinations" is that it, as the policyholder, a railroad with headquarters located in Chicago for 150 years, must litigate the "largest commercial litigation matter in its corporate history" in a county where it never owned or operated a single foot of railroad track or employed a single person.  

A.  Venue

Section 2--101 of the Code of Civil Procedure provides that venue is proper (1) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose.  735 ILCS 5/2--101 (West 2000).  Under section 2--102 of the Code, any private corporation or railroad organized under the laws of the State of Illinois, and any foreign corporation authorized to transact business in this state, "is a resident of any county in which it has its registered office or other office or is doing business."  735 ILCS 5/2--102(a) (West 2000).  

There are multiple parties in this action.  Regardless of how the parties are aligned, they fall into two categories: (1) Illinois Central, the policyholder; and (2) the insurance companies issuing or subscribing to insurance policies held by Illinois Central or its predecessor for losses arising from its operations.  The interest of the insurance companies, whether identified as plaintiffs or defendants, is the same.  Regardless of the party designation, each insurance company seeks a declaration that there is no coverage for Illinois Central's environmental losses under the various policies and no duty to defend or indemnify Illinois Central.  Indeed, the amended complaint even references the plaintiff and defendant insurers collectively as "insurers."  

Since the interest of every party to the amended complaint is adverse to Illinois Central, we question whether the 32 insurance companies named as defendants in the amended complaint were actually joined in good faith for the purpose of obtaining a judgment against them, or whether they were joined for the sole purpose of fixing venue in Lake County.  Illinois Central is correct that, by designating the 32 insurance companies as defendants, plaintiffs eliminated the possibility of a successful motion to transfer venue for filing in the wrong venue, as it is undisputed that some of these entities have offices in Lake County or are doing business in Lake County.  By virtue of the affidavit of Richard Verkler, submitted in support of Illinois Central's motion to transfer venue, it is undisputed that Illinois Central has its principal place of business in Chicago but no employees, offices, railroad track, or other operations are located in Lake County.  Therefore, if Illinois Central were the sole defendant and the collective insurance companies were identified as defendants, it appears as though a motion to transfer venue for filing in the wrong venue would be appropriate.  The fact that the supporting record indicates that none of the insurers, even codefendants, joined in Illinois Central's motion to transfer supports Illinois Central's position that these parties were joined as defendants to fix venue and for forum-shopping purposes. 

B.  Doctrine of 
forum non conveniens

Nevertheless, Illinois Central brought a motion to transfer venue pursuant to the doctrine of 
forum non conveniens
.  
Forum non conveniens
 is an equitable doctrine "founded in considerations of fundamental fairness and sensible and effective judicial administration."  
Adkins v. Chicago, Rock Island & Pacific R.R. Co.
, 54 Ill. 2d 511, 514 (1973).  It 
allows a trial court to decline jurisdiction and direct the suit to an alternate forum with jurisdiction when litigating in that forum "would better serve the ends of justice."  
Vinson v. Allstate
, 144 Ill. 2d 306, 310 (1991).  
A trial court is vested with broad discretion in balancing the various considerations relevant to a ruling on a 
forum non conveniens
 motion, and its decision will be reversed when the trial court has abused its discretion.  
McClain v. Illinois Central Gulf R.R. Co.
, 121 Ill. 2d 278 (1988).   

When ruling on a 
forum non conveniens
 motion, the trial court must weigh a variety of private and public interest factors.  
Certain Underwriters at Lloyd's, London v. Bertrand Goldberg
 
Associates, Inc.
, 238 Ill. App. 3d 692 (1992).  T
he private interest factors include (1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make the trial of a case easy, expeditious, and inexpensive--for example, the availability of compulsory process to secure attendance of unwilling witnesses, the cost to obtain attendance of willing witnesses, and the ability to view the premises (if appropriate). See 
Griffith v. Mitsubishi Aircraft International, Inc.
, 136 Ill. 2d 101, 105-06 (1990); 
Bland v. Norfolk & Western Ry. Co.
, 116 Ill. 2d 217, 224 (1987). The public interest factors include (1) the interest in deciding localized controversies locally; (2) the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a county with little connection to the litigation; and (3) the 
administrative difficulties presented by adding further litigation to court dockets in already congested fora. See 
Griffith
, 136 Ill. 2d at 106. Court congestion is a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly. See 
Brummett v. Wepfer Marine, Inc.
, 111 Ill. 2d 495, 503 (1986).  

A further consideration is the forum in which the plaintiff has chosen to file the complaint. Although a plaintiff has an interest in choosing the forum where his rights will be vindicated, this choice will be given substantially less deference when neither the plaintiff's residence nor the site of the accident or injury is located in the chosen forum. 
Griffith
, 136 Ill. 2d at 106.  The reasons are clear. When a plaintiff's home forum is chosen, it is reasonable to assume that the choice is convenient.  However, when the plaintiff is foreign to the forum chosen and the action that gives rise to the litigation did not occur in the chosen forum, this assumption is no longer reasonable.  Instead, it is reasonable to conclude that the plaintiff engaged in forum shopping to suit his individual interests, a strategy contrary to the purposes behind the venue rules.  See 
Wieser v. Missouri Pacific R.R. Co.
, 98 Ill. 2d 359, 367 (1983); accord 
Bland v. Norfolk & Western Ry. Co.
, 116 Ill. 2d 217, 228 (1987); 
Brummett
, 111 Ill. 2d at 500.
 In deciding a 
forum non conveniens
 motion, the trial court must evaluate the 
total circumstances of the case in determining whether the defendant has proved that the balance of factors strongly favors transfer. 
Peile v. Skelgas, Inc.
, 163 Ill. 2d 323, 336-37 (1994)
; see 
Bland
, 116 Ill. 2d at 227.  The defendant must show that the plaintiff's chosen forum is inconvenient to the defendant and another forum is more convenient to all parties. See 
Hall v. CBI Industries, Inc.
, 264 Ill. App. 3d 299, 303 (1994), citing 
Kwasniewski v. Schaid
, 153 Ill. 2d 550, 555 (1992).

Our supreme court reaffirmed the validity of the doctrine of intrastate 
forum non conveniens
 in 
First National Bank v. Guerine
, 198 Ill. 2d 511 (2002), its first reported decision on the issue of 
forum non conveniens
 since 
Peile
, 163 Ill. 2d 323.  In 
Guerine
, plaintiff died in an automobile accident in De Kalb County when defendant's trailer carrying a speedboat broke away, crossed the center line, and collided head-on with plaintiff's vehicle.  Defendant and one other witness resided in Cook County.  Although all of the other trial witnesses were located outside Cook County, our supreme court held that the trial court abused its discretion in granting the motion to transfer venue.  Recognizing that the doctrine is unclear and that there has been no consistency in its application, our supreme court attempted to clarify, stating that "a trial court abuses its discretion in granting an intrastate 
forum non conveniens
 motion to transfer venue where, as here, the potential trial witnesses are scattered among several counties, including the plaintiff's chosen forum, and no single county enjoys a predominant connection to the litigation."  
Guerine
, 198 Ill. 2d at 526.

It is undisputed that the underlying suit is 
substantial, in that it involves multiple states, over 100 insurance companies, and several hundred million dollars in coverage.   Due to the nature of the suit and its multiparty and multistate involvement, an analysis of the counties of residence of potential witnesses for the purpose of assessing convenience, as in personal injury cases such as 
Guerine
, 198 Ill. 2d 511,  
Peile
, 163 Ill. 2d 323, and 
Washington v. Illinois Power Co.
, 144 Ill. 2d 395 (1991), is not determinative.  Our supreme court's decision in 
Guerine
 is relevant to our analysis not for its result but for the court's analysis of the principles underlying 
forum non conveniens
 motions and the relevant public and private interest factors.

It is undisputed that an immense amount of discovery will ensue in this litigation, including hundreds of depositions of insurance brokers, underwriters, and company representatives that reside in various counties in various states.  Contrary to 
 Guerine
, plaintiffs have not provided an indication that any witness that may be called to testify would deem it more convenient to litigate in Lake County.  In fact, plaintiffs have conceded at oral argument that it is doubtful this case will even be tried.
  
In contrast, Illinois Central has submitted undisputed evidence that its corporate headquarters are located in Cook County, that it never had offices in Lake County, that various of its coverage witnesses work in Cook County, that the insurance policies at issue were not purchased or delivered in Lake County, that the insurance broker for the policies at issue was headquartered in Cook County, and that the Chicago office of Lord, Bissell & Brook, the designated attorney in fact by Lloyds, London and several of the London market insurer plaintiffs, was involved as early as 1977 in acquiring notice of claims under the policy and assessing the losses incurred. 

We hesitate to state that these factors make litigating in Cook County rather than in Lake County more expedient or convenient, as we anticipate that the scheduling of depositions, propounding of written documents, and the scheduling of trial witnesses, many of whom will be traveling from out of state, will be onerous given the number of parties involved.  Nevertheless, the undisputed facts do indicate that Cook County bears a more significant and legitimate connection to the underlying matter.  Not only are various witnesses with relevant knowledge of the insurance policies located in Cook County but also the policies were procured in that forum.  There is nothing in the supporting record submitted on appeal that would support a conclusion that litigating in Lake County would be more convenient to the multitude of parties.  Additionally, Cook County has a legitimate connection, not only because Illinois Central is headquartered there but also because two of the sites of alleged environmental contamination giving rise to the policy dispute are located in Cook County.  In contrast, none of the sites are located in Lake County.  

In addition to arguing that plaintiffs' choice of forum is entitled to deference, plaintiffs attempt to create a nexus to Lake County by arguing that Illinois Central's postevent merger with a Canadian railroad makes this litigation "paramount" to the citizens of Lake County.  Since the dispute at hand involves the interpretation of insurance policies procured far before the Illinois Central's merger with the Canadian railway, this factor is irrelevant.  We are not persuaded that any evidence regarding Canadian National's haulage agreement with a Wisconsin railway for the use of tracks in Lake County will even be introduced into evidence at trial, much less that the citizens of Lake County maintain an interest in the coverage action by virtue of the haulage agreement.  Further, plaintiffs' choice of Lake County as the forum for litigating this suit is entitled to less deference, since none of the plaintiffs are located in Lake County and the occurrence did not take place there. 

In 
Guerine
, our supreme court stated that "[a] concern animating our 
forum non conveniens
 jurisprudence is curtailing forum shopping by plaintiffs."  
Guerine
, 198 Ill. 2d at 521.  The court went on to note that in intrastate 
forum non conveniens
 matters both parties " 'are jockeying for position by seeking a judge, jury, and forum that will enable them to achieve the best possible result for their clients' " (
Guerine
, 198 Ill. 2d at 521, quoting G. Maag, 
Forum Non Conveniens in Illinois: A Historical Review, Critical Analysis and Proposal for Change
, 25 So. Ill. L.J. 461, 510 (2001)) and that all other considerations underlying the 
forum non conveniens
 analysis are secondary.  We find support for this statement based on the factual circumstances of the litigation at issue, particularly since Lake County has no practical connection to the issues involved.  An integral part of the 
forum
  
non conveniens
 analysis is fairness to the litigants and convenience to those that will be called to testify at trial.  Realigning parties for the purpose of fixing venue in a county where there may be a more favorable outcome to plaintiffs does not reinforce or complement the principles of 
forum non conveniens
.  Instead, it perverts them.

The evidence submitted in support of and in opposition to the motion reveals that no witness has been identified with ties to Lake County, the insurance policies were not procured or delivered in Lake County, the policy holder and insurers at issue are not headquartered in Lake County, and there are no railroad sites alleged to be covered under the policy located in Lake County.  Therefore, we question plaintiffs' motivation for choosing this forum.  Plaintiffs' choice to litigate in Lake County does not appear to be based on the convenience of any party or witness, the site of the occurrence, or a good-faith alignment of the parties.  We have no doubt that litigating this matter will be costly and burdensome to all parties and that it will be protracted and lengthy, regardless of the county in which it is pending.  Nevertheless, the evidence submitted in support of and in opposition to the motion indicates that the balance of private and public interest factors weighs heavily in favor of Illinois Central and the transfer of this case.

The judgment of the circuit court of Lake county is reversed, and the cause is remanded to the trial court for further proceedings consistent with the opinion of this court.

Reversed and remanded.

BYRNE and KAPALA, JJ., concur.

APPENDIX A

Admiral Insurance Company; American Centennial Insurance Company; American Home Assurance Company; American Reinsurance Company; Audubon Indemnity Company; Casualty Insurance Company; Century Indemnity Company, as successor to both CIGNA Specialty Insurance Company, formerly known as California Union Insurance Company and to CCI Insurance Company, successor to Insurance Company of North America; Columbia Casualty Company; Continental Casualty Company; Employers Insurance of Wausau; Employers Mutual Casualty Company; Federal Insurance Company; Fireman's Fund Insurance Company; First State Insurance Company; General Reinsurance Corporation; Granite State Insurance Company; Harbor Insurance Company; The Home Insurance Company; Insurance Company of the State of Pennsylvania; Interstate Reinsurance Corporation, also known as Interstate Indemnity Company; Landmark Insurance Company; Lexington Insurance Company; National Surety Corporation; National Union Fire Insurance Company of Pittsburgh, Pennsylvania; Nationwide Mutual Insurance Company; Northeastern Fire Insurance Company of Pennsylvania; Old Republic Insurance Company; Reliance Fire & Accident Insurance Corporation, Ltd.; Royal Insurance Company; Stonewall Insurance Company; Transportation Mutual Insurance Company; Travelers Casualty & Surety Company of America, as successor to Aetna Casualty and Surety Company; Union Atlantique d'Assurances, S.A.; and Yosemite Insurance Company.

APPENDIX B

Certain Underwriters at Lloyd's, London; Accident & Casualty Insurance Company of Winterthur; Agrippna Verischerungs Aktiengesellschaft; Alba Insurance Company; Allanz International Insurance Company Limited; Allianz Versicherungs Aktiengesellschaft; Amsterdam-London Verzekering Maatschappij NV; Ancon Insurance Company (UK) Limited; Anglo-French Insurance Company Limited; Anglo-Saxon Insurance Association Ltd.; Argonaut Insurance Company; Argonaut Northwest Insurance Company; Assicurazioni Generali Spa; Baltica-Skandinavia Insurance Company (UK) Limited; Bellefonte Insurance Company (U.S.); Bishopsgate Insurance Company Limited; British Merchants Insurance Co. Ltd.; Chemical Insurance Company, Ltd.; CNA Reinsurance of London Limited; Compagnie Europeene d'Assurances Industrielles S.A.; Companhia De Seguros Imperio S.A.; Delta-Lloyd Non-Life Insurance Company Limited; Delta-Lloyd Schadeverzekering NV; Drake Insurance Company Limited; Eisen Und Stahl Ruckversicherung A.G.; European General Reinsurance Co. of Zurich; Europeesche Verzekering Maatschappij NV; Excess Insurance Company Limited; Fidelidade Insurance Company of London; FM Insurance Co. Ltd; Folksam International Insurance Company (UK) Limited; Gresham Insurance Society Limited; Guildhall Insurance
 Company Ltd.; Hansa Marine Insurance Company; Heddington Insurance Company (UK) Limited; Helvetia Accident Swiss Insurance Co.; Highlands Insurance Company Limited; Indemnity Marine Assurance Company Limited; Insco Limited; Instituto de Reasseguros Do Brasil; Interlloyd Verzekering Maatschappij NV; Iron Trades Mutual Insurance Co. Ltd., A Mutuelle du Mans Assurances Iard; La Preservatrice Compagnie Anonyme d'Assurances Contre Les Accidents L'Incendie Et Les Risques Divers; Le Assicurazioni d'Italia Societe; Lloyd Italico Assicurazioni Spa; London and Edinburgh General Insurance Company Limited; Maas Lloyd NV Schadeverzekeringsmaatschappij; (The) Mercantile & General Reinsurance Co. Ltd.; Minster Insurance Company Limited; Namur Assurances du Credit; National Casualty Company of America Limited; Nisshin Fire & Marine Insurance Company Ltd.; Pacific Insurance Company; Reaseguradora Nacional de Venezuela Compania Anonima; Reliance Fire & Accident Ins. Corp. Ltd.; Rheinland Versicherungs AG; River Thames Insurance Company Limited; Royal Scottish Insurance Co. Ltd.; Royal Belge Incendie Reassurance S.A. d'Assurances; Simcoe & Erie General Insurance Company; Sphere Drake Insurance PLAC; Sphere Insurance Company Limited; St. Katherine Insurance Company PLC; St. Paul Reinsurance Company Limited; Storebrand Insurance Company (UK) Limited; Stronghold Insurance Company Limited; Swiss National Insurance Co. Ltd.; Swiss Union Insurance Company; Switzerland General Insurance Co. Ltd.; Iaisho Marine & Fire Insurance Company (Europe) Limited; Terra Nova Insurance Company Limited; The Baloise Fire Insurance Company Limited; The British Aviation Insurance Company Limited; The Dominion Insurance Company Limited; The Edinburgh Assurance Company; The Scottish Lion Insurance Company Limited; The Sumitomo Marine and Fire Insurance Company, Limited; The Tokio Marine & Fire Insurance Company (UK) Limited; Threadneedle Insurance Company Limited; Trent Insurance Co. Ltd.; Turegum Insurance Company Limited; Unionamerica Insurance Company Limited; Vanguard Insurance Co. Ltd.; (The) Victory Insurance Co. Ltd.; Winterthur Swiss Insurance Company; World Auxiliary Insurance Corporation Limited; World Marine & General Ins. Co. Ltd.; Wurttembergische Versicherrung AG; Yasuda Fire & Marine Insurance Company (UK) Limited; Yasuda Fire and Marine Insurance Company of Europe Ltd; Zion Insurance Company; Zurich Reinsurance Company (UK) Limited; International Insurance Company, Individually and as Successor-in-Interest to International Surplus Lines Insurance Company; and Stonewall Insurance Company.