2026 IL App (1st) 252211

SECOND DIVISION
June 23, 2026

No. 1-25-2211

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| RAFAELA COLAIZZI, Individually and as Next Friend of JOSHUA COLAIZZI, a Minor, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | Appeal from the Circuit Court |
| v. | ) ) | of Cook County |
| FOR EYES OPTICAL COMPANY and LUXOTTICA OF AMERICA, INC., | ) ) ) | 24L13587 |
| Defendants-Appellants | ) ) ) | Honorable Kathy M. Flanagan, Judge Presiding |
| (ROBERT T. CARLSON, O.D., and ROBERT T. CARLSON & ASSOCIATES, | ) ) ) | |
| Defendants). | ) | |

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and D.B. Walker concurred in the judgment.

## O R D E R

¶ 1     *Held:* Circuit court did not abuse its discretion in denying defendant's intrastate *forum non conveniens* motion.

¶ 2     Plaintiff Rafaela Colaizzi filed an optometric malpractice suit, individually and on behalf of her minor son, Joshua Colaizzi, alleging that he experienced vision loss and had to undergo a corneal transplant due to negligent medical treatment by defendant optometrist Dr. Robert T.

Carlson, O.D. The additional defendant Luxottica of America, Inc., d/b/a For Eyes Optical (For Eyes), brings this interlocutory appeal from the denial of its *forum non conveniens* motion to transfer the action from Cook County to DuPage County, Illinois. For Eyes contends that all of the relevant factors overwhelmingly supported the motion.

¶ 3    The pending complaint indicates the following. Dr. Carlson examined Joshua's eyes on January 22, 2021, at a For Eyes office in DuPage County, in Bloomingdale, at 357 W. Army Trail Road, #32. Joshua was complaining about his left eye. Dr. Carlson found an ulcer and prescribed Tobradex eyedrops, which is a combination of the antibiotic tobramycin and the steroid dexamethasone. Although Joshua began using the eyedrops the same day as directed, he returned to the For Eyes location on January 25, 2021, complaining that his eye had worsened. This time, he was seen by optometrist, Dr. Sylvia Thoman, O.D., who instructed him to seek treatment from an ophthalmologist at Suburban Associates in Ophthalmology (Suburban Associates). The other practice was located in Cook County, in Arlington Heights, at 1100 W. Central Road, Suite #205. Joshua went to Suburban Associates that same day, where he was treated by Dr. Cereesa Longest, M.D. Dr. Longest diagnosed a 4 mm ulcer and diffuse conjunctival hyperemia in Joshua's left eye; collected a corneal culture; and prescribed tobramycin and vancomycin. The culture was positive for the bacteria Pseudomonas aeruginosa. The bacterial infection in Joshua's eye scarred his cornea, which led to vision loss. On January 27, 2021, he underwent a surgical procedure in which Dr. Naveed Ansari, M.D., removed the diseased cornea and replaced it with another cornea. The Colaizzis' complaint consists of three counts of optometric malpractice and includes the findings and report of a consulting doctor of optometry. The optometrist opined that the steroid component of Tobradex was an immunosuppressant that caused the eye infection to worsen, the antibiotic

component of Tobradex was likely inadequate, and infectious ulcers are generally treated by fluoroquinolone or fortified antibiotics.

¶ 4     Count I is directed at Dr. Carlson and includes allegations that he negligently and carelessly failed to recognize the serious nature of Joshua's corneal ulcer and ordered Tobradex instead of an appropriate medication. Count II is directed at Robert T. Carlson & Associates, which is alleged to be Dr. Carlson's principal or employer. Count III is directed at For Eyes and Luxottica. For Eyes was allegedly Dr. Carlson's principal or employer in 2021. It was a Pennsylvania corporation that engaged in the business of providing eye care services in Illinois, and its agent for service, at the time, was CT Corporation System, whose address was 28 S. LaSalle Street, Suite 814, Chicago. However, according to the Pennsylvania Department of State, on June 30, 2024, For Eyes became "inactive," "merged out," and is survived by Luxottica. Luxottica is an Ohio corporation that continues to do business in Illinois as and through For Eyes. Luxottica refers to itself as For Eyes in these proceedings.

¶ 5     For Eyes moved to transfer venue to DuPage County. The circuit court found that all of the relevant factors did not favor transfer or were neutral. After the circuit court denied the motion, For Eyes petitioned for leave to appeal pursuant to Rule 306(a)(2) (eff. Oct. 1, 2020). We granted the petition and now address the parties' arguments.

¶ 6     The equitable doctrine of *forum non conveniens* "allows a trial court to decline jurisdiction in the exceptional case where trial in another forum with proper jurisdiction and venue 'would better serve the ends of justice.' " *First American Bank v. Guerine*, 198 Ill. 2d 511, 515 (2002) (quoting *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991)). Thus, the court " 'may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.' "

*Id.* (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507 (1947)). The doctrine may be asserted when there is a choice between forums in different states or between forums within the same state. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 176 (2003).

¶ 7 The circuit court is afforded considerable discretion in ruling on a *forum non conveniens* motion but its discretionary power "should be exercised *only in exceptional circumstances* when the interests of justice require a trial in a more convenient forum." (Emphasis in original.) *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441-42 (2006). It is a "rare, exceptional case" that favors transfer. *Seilheimer v. Olsen*, 2015 IL App (1st) 240418, ¶ 2.

¶ 8 Orders denying *forum non conveniens* motions have generally only been reversed when "the connection between the litigation and the plaintiff's chosen forum is 'so slight as to be virtually non existent,' [citation], or when a reviewing court determines that there has been an abuse of discretion *** [citation]." *Snook v. Lake Forest Hospital*, 133 Ill. App. 3d 998, 1000-01 (1985). An abuse of discretion has occurred only when no reasonable person would take the same view of the factors as the circuit court. *Dawdy*, 207 Ill. 2d at 177. "The issue then is, not what decision we would have reached if we were reviewing the facts on a clean slate, but whether the trial court acted in a way that no reasonable person would." *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 657 (2009)); see also *Hefner v. Owens-Corning Fiberglas Corp.*, 276 Ill. App. 3d 1099, 1103 (1995). A " 'discretionary decision implies a range of acceptable outcomes.' " *Schilling v. Quincy Physicians & Surgeons Clinic, S.C.*, 2026 IL 131411, ¶ 23 (quoting *People v. Kimble*, 2019 IL 122830, ¶ 46)).

¶ 9 "[T]he battle over forum begins with the plaintiff's choice already in the lead." *Guerine*, 198 Ill. 2d at 521. " 'In most instances, the plaintiff's initial choice of forum will prevail, provided

venue is proper and the inconvenience factors attached to such forum do not greatly outweigh the plaintiff's substantial right to try the case in the chosen forum.' " *Id*. (quoting *Peile v. Skelgas*, 163 Ill. 2d 323, 335-36 (1994)). See also *Langenhorst*, 219 Ill. 2d at 444 (the plaintiff's forum choice should rarely be disturbed). "Though the plaintiff's choice is not absolute, intrastate transfer is appropriate only when the litigation has 'no practical connection' (*Peile*, 163 Ill. 2d at 336), no nexus, with the plaintiff's chosen forum." *Guerine*, 198 Ill. 2d at 521. The defendant must show that the plaintiff's chosen forum is inconvenient to the defendant and that another forum is more convenient to all parties. ¶518. Although this is a difficult standard for a defendant to meet, "it does not foreclose legitimate transfers when the balance of factors strongly favors litigation in another forum." *Id*. at 521.

¶ 10    A plaintiff's choice of forum is entitled to substantial deference. *Dawdy*, 207 Ill. 2d at 173. However, the plaintiff's choice of forum is not entitled to the same weight in all cases. " 'When the home forum has been chosen, it is reasonable to assume that this choice is convenient.' " *Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)). " 'Similarly, when the site of the accident or injury is chosen, the choice is convenient because the litigation has the aspect of being "decided at home." ' " *Id.* (quoting *Guerine*, 198 Ill. 2d at 518). In contrast, " '[w]hen the plaintiff is foreign to the forum chosen and the action that gives rise to the litigation did not occur in the chosen forum, this assumption [of convenience] is no longer reasonable.' " *Id.* (quoting *Certain Underwriters at Lloyds, London v. Illinois Central R.R. Co.*, 329 Ill. App. 3d 189, 196 (2002)). Under those circumstances, it is " 'reasonable to conclude that the plaintiff engaged in forum shopping to suit his individual interests, a strategy contrary to the purposes behind the venue rules.' " *Id*. Plaintiffs' zeal to litigate where judges are favorable, juries are generous, and court

procedures are not burdensome "is matched only by defendants' efforts in seeking to avoid such fora.' " *Espinosa v. Norfolk & Western Ry. Co.,* 86 Ill. 2d 111, 123 (1981) (quoting *Miles v. Illinois Central R.R. Co.,* 315 U.S. 698, 707 (1942) (Jackson, J., concurring)).

> " 'The truth of the matter is that both plaintiffs' counsel and defendants' counsel are jockeying for position by seeking a judge, jury and forum that will enable them to achieve the best possible result for their clients. There is no doubt that in the personal injury context, the plaintiff is seeking a forum where he can recover the most money and the defendant is seeking a forum where it will have to pay the least. All other considerations are secondary to both sides.' G. Maag, *Forum Non Conveniens in Illinois: A Historical Review, Critical Analysis, and Proposal for Change*, 25 So. Ill. L.J. 461, 510 (2001)." *Guerine*, 198 Ill. 2d at 521.

¶ 11 Nevertheless, the deference that is afforded to the plaintiff's choice of a foreign forum " 'is only *less*, as opposed to *none*.' " (Emphases in original.) *Id.* at 518 (quoting *Elling v. State Farm Mutual Automobile Insurance Co*., 291 Ill. App. 3d 311, 318 (1997)).

¶ 12 A *forum non conveniens* motion also requires the court to evaluate certain private and public interests, without giving emphasis to any one of them. *Dawdy*, 207 Ill. 2d at 172. The private interest factors concern the convenience of the litigants and the public interest factors affect the administration of the courts. *Bland v. Norfolk & Western Ry. Co.*, 116 Ill. 2d 217, 223-24 (1987). The court does not weigh the private and public interest factors against each other. *Langenhorst*, 219 Ill. 2d at 444. Instead, it evaluates all the circumstances to determine whether the balance of factors strongly favors transfer. *Id.* " 'Private interest factors include (1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence;

and (3) all other practical problems that make trial of a case easy, expeditious, and inexpensive *** .' " *Id.* (quoting *Guerine*, 198 Ill. 2d at 516.) "Public interest factors include (1) the interest in deciding controversies locally; (2) the unfairness of imposing trial expense and the burden of jury duty on residents of a forum that has little connection to the litigation; and (3) the administrative difficulties presented by adding litigation to already congested court dockets." *Id.* at 443-44 (citing *Guerine*, 198 Ill. 2d at 516-17). Each case is to be decided on its particular facts. *Id.* at 443.

¶ 13 For Eyes argues that the circuit court misconstrued the record and failed to recognize that the Colaizzis reside in West Chicago, DuPage County and that their choice of a foreign forum was owed minimal deference.

¶ 14 The Colaizzis' choice is entitled to less deference, but only " '*less*, as opposed to *none*' " (Emphases in original.) *Guerine*, 198 Ill. 2d at 518 (quoting *Elling*, 291 Ill. App. 3d at 318). *Foreign non conveniens* is an " 'unequal balancing test' " that begins with the Colaizzis' chosen forum in the lead. *Id.* at 521 (quoting *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 107 (1990)). Furthermore, For Eyes cannot rely on any inconvenience to the Colaizzis as the basis for transfer. *Id.* at 518 (a defendant "cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff"). For Eyes must demonstrate through the factors that the proposed alternative forum of DuPage County is *substantially* more appropriate than the current one. *Langenhorst*, 219 Ill. 2d at 444 (the balance of factors must strongly favor the defendant's choice to justify disturbing the plaintiff's choice).

¶ 15 With respect to the private interest factors, the factor of convenience of the parties does not favor transfer. Dr. Carlson's residence, his business, and the Bloomingdale location of For Eyes Optical Company are all located in DuPage County. Even so, the circuit court reasoned that Cook

County was not inconvenient for *all* of the parties because For Eyes Optical Company merged with Luxottica, which is a company that maintains numerous locations in Cook County. In addition, For Eyes' registered agent is in Cook County. For Eyes contends this was error because its physical presence and "doing business" in Cook County is not dispositive.

¶ 16    The fact that a defendant conducts business within a county is not the only factor that the circuit court should consider in its analysis. *Gridley v. State Farm Mutual Automobile Insurance*, 217 Ill. 2d 158, 172 (2005). "[T]he place of defendant's residence may properly be considered along with other connections which exist between the litigation and the chosen forum." *Id.* at 173.

"It should not be inferred *** that the place of defendant's residence, or the situs of the tort, are of no significance. They may properly be considered, along with other connections which exist between the litigation and chosen forum. However, all other factors relevant to a *forum non conveniens* motion must also be balanced in determining whether to dismiss an action." *Jones v. Searle Laboratories*, 93 Ill. 2d 366, 377 (1982).

¶ 17    The existence of a registered agent in a particular location is an insubstantial link. *Hulsey v. Scheidt*, 258 Ill. App. 3d 567, 578 (1994).

¶ 18    The order on appeal does not suggest that the circuit court placed undue emphasis on For Eyes' location or its choice of a Cook County registered agent. The court's four-page single-spaced order addresses all of the relevant factors and does not treat any single fact as determinative.

¶ 19    The second factor, the relative ease of access to sources of testimonial, documentary and real evidence works against For Eyes.

¶ 20    In *Starr*, the circuit court considered three categories of testimonial evidence: (1) occurrence or " 'on site' " witnesses, (2) post-injury treating witnesses, and (3) lay or damages

witnesses. *Starr v. Presence Central & Suburban Hospitals Network*, 2024 IL App (1st) 231120, ¶ 36. For Eyes has not identified any nonparty defense witnesses. It argues only generally that the alleged malpractice occurred at the For Eyes location in DuPage County and "involve[d] employees, managers, and witnesses who work at this location." However, the malpractice allegations are directed at Dr. Carlson and do not indicate that someone else contributed to or witnessed Joshua's injury. Furthermore, For Eyes has not specified any post-injury treating witnesses or any person who can testify about damages. The Colaizzis identified seven post-injury treaters and damages witnesses, all of whom practice in Cook County. These Cook County witnesses include Dr. Careesa Longest, Dr. Naveed Ansari, and Dr. Kimberlee Curnyn, whose practice is in Arlington Heights and Elk Grove Village; Dr. Joel Sugar and Dr. James J. Reidy, who are in Chicago; Dr. Michael Slavik, who is in Schamburg; and Dr. Brent Ostoich, who is in Hoffman Estates.

¶ 21   For Eyes contends that the circuit court gave undue weight to the location of the physician witnesses. In *Bland*, the supreme court stated that a plaintiff can "easily frustrate the *forum non conveniens* principle by selecting as a witness a treating physician or expert in *** an inconvenient forum." *Bland*, 116 Ill. 2d at 227. The plaintiff in *Bland* was a railway worker who sued his employer for personal injuries and argued against transferring his case, based in part on the fact that two of his five treating physicians were located in the county where he had filed. *Id.* at 221, 229. There was no indication that he had actually been strategic when choosing his treating physicians. Nevertheless, the opinion indicates that the location of subsequent treaters is not to be given undue weight, given the incentive it would create for an injured party to seek care in an inconvenient forum perceived as favorable to plaintiffs. *Id.* at 227.

¶ 22    In *Starr*, 2024 IL App (1st) 231120, ¶ 40, the court acknowledged this concern but pointed out that the plaintiff, Karl Starr, likely did not choose his post-injury physicians outside of Will County. Starr was suffering from sepsis shock and other serious conditions when he was transferred by ambulance from a Will County hospital to a Cook County hospital where he underwent a month of treatment. *Id.* During the course of his hospitalization, Mr. Starr developed gangrene and both of his legs were amputated at the tibia. *Id.* ¶ 5. After that, he was transferred to a rehabilitation center in Indiana. *Id.* ¶ 40. The court found that the "concern voiced in *Bland* [was] simply not applicable ***, where nothing in the record suggest[ed] that the Starrs had any opportunity or inclination to strategically choose the location of Mr. Starr's post-injury care to suit their litigation preferences." *Id.*

¶ 23    Similar circumstances occurred in *Giannakopoulos v. Adventist Bolingbrook Hospital*, 2024 IL App (1st) 240399-U, ¶¶ 5-6, in which the plaintiff underwent surgery in a Will County hospital and then began suffering limb necrosis purportedly because of medication errors and other negligence. The facility made the decision to transfer him to a Cook County hospital, where both of his legs were amputated and he was hospitalized for six months. *Id.* ¶ 19. After that, he suffered two other amputations, was treated for an infection, and had dozens of post-surgery appointments in Cook County. *Id.* Then there was further treatment and rehabilitative care in Cook County, DuPage County, and Will County, followed by ongoing treatment in Cook County. *Id.* ¶ 20. The reason that Giannakopoulos had so many treating physicians in Cook County was because of the defendant hospital's initial decision to transfer him to treatment in Cook County. *Id.* ¶ 21.

¶ 24    For Eyes contends that the location of Joshua's treating physicians in Cook County was overemphasized. However, For Eyes did not identify anyone capable of testifying to causation and

damages other than those individuals. Any speculation about possible witnesses would not be evidence for the circuit court to take into consideration. *Boner v. Peabody Coal Co.*, 142 Ill. 2d 523, 533 (1991). Furthermore, like the *Starr* and *Giannakopoulos* families, Joshua's mother did not select his medical providers in Cook County. An optometrist in For Eyes' Bloomingdale location sent the Colaizzis to the Suburban Associates ophthalmologic practice in Arlington Heights, Cook County. Although For Eyes does not dispute that Dr. Thoman's referral is what led to Joshua having further treatment in Cook County, it contends that the Colaizzis were "simply directed *** to seek treatment elsewhere." This statement is contrary to one of the complaint's specific allegations: "21. On January 25, 2021, JOSHUA COLAIZZI returned to FOR EYES and was seen by another optometrist, Dr. Sylvia Thoman, and she instructed JOSHUA COLAIZZI to seek treatment with an ophthalmologist and sent him to Suburban Associates in Ophthalmology, located at 1100 W. Central Road, Suite 205, Arlington Heights, Cook County, Illinois 60005." We are not persuaded that the weight which the circuit court gave to witness location was *undue* weight.

¶ 25    As part of its "ease of access to evidence" argument, For Eyes contends that it was error to find that access to documentary evidence did not favor transfer. However, the circuit court's finding echoes the many, many cases that denigrate the significance of document location. See *Johnson v. Nash*, 2019 IL App (1st) 180840, ¶ 51; *Vivas*, 392 Ill. App. 3d at 659 ("the location of documents, records and photographs has become a less significant factor in *forum non conveniens* analysis in the modern age of email, Internet, telefax, copying machines and world-wide delivery services, since they can now be easily copied and sent"); *Erwin ex rel. Erwin v. Motorola, Inc.*, 408 Ill. App. 3d 261, 281 (2011) ("this factor alone would not weigh in favor of transfer ***, since

it has become well-recognized by our courts that given our current state of technology *** documentary evidence can be copied and transported easily and inexpensively"); *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827, 834 (2006) ("the location of documents is not significant because documents can be transported with ease and at little expense"); *Hayes v. Fireman's Fund Mortgage Corp.,* 272 Ill. App. 3d 271, 278 (1995) (document location is becoming an increasingly less significant factor in *forum non conveniens* analysis because documents can be transported with ease and at little expense); *Bianco v. Texas Instruments, Inc.*, 627 F. Supp. 154, 165 (N.D. Ill. 1985) (the location of documents is not compelling given "the ready availability of photocopying and the relative ease with which documents may be selectively shipped around the country"); *American Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254, 264 (W.D. Mo. 1980) (citing the development of photocopying as the reason that the location of documents should not be given great weight). See 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3853 (4th ed. April 2026) (this factor tends to be given relatively little weight because transporting copies is no longer cumbersome and expensive). Moreover, For Eyes has not identified any particular documentary evidence that would make DuPage County a substantially more appropriate forum.

¶ 26    The parties' ease of access to witness, documentary and real evidence indicates that the trial judge reasonably concluded that the second factor did not favor transfer.

¶ 27    Under the category of "all other practical problems that make trial of a case easy, expeditious and inexpensive" (*Guerine*, 198 Ill. 2d at 516), the judge took into consideration the availability of compulsory process to secure the attendance of unwilling witnesses. Subpoenas are available in both counties pursuant to Illinois Supreme Court Rule 237 (eff. Oct. 1, 2021). There

was no indication that any witnesses would be reluctant to testify and For Eyes conceded that this factor was neutral. The circuit court reasonably found that this factor was neutral and did not weigh in favor of transfer. See *Evans v. Patel*, 2020 IL App (1st) 200528, ¶ 44 (affirming circuit court's neutral finding under the same circumstances).

¶ 28    As far as the cost of attaining the attendance of willing witnesses, For Eyes argued that the treating physicians were likely to testify by videoconferencing, but their travel to the DuPage County Courthouse would be less time consuming than to Cook County's Daley Center and that the suburban location had a "free" parking lot, unlike its urban counterpart. The court found that the "free" claim was vague and failed to account for the fact that public transit is more frequent and accessible in Cook than in DuPage. Furthermore, because parts of the two counties are adjacent, transferring the Colaizzis' suit to DuPage would be unlikely to improve convenience or cost. See *Griffith*, 136 Ill. 2d at 113 (regarding the adjacent counties of Cook and DuPage).

¶ 29    For Eyes argues that the travel times and mileage from the physicians' offices to Cook County's Daley Center would be greater than driving to the DuPage County Courthouse. It argues, for instance, that the office of Drs. Longest, Ansari and Curnyn is 25.8 from the Daley Center but 22.9 miles from the DuPage courthouse. Also, that if one were driving at 11 a.m., the travel times would be 40 minutes and 34 minutes, respectively. For the first time on appeal, it adds data about Drs. Slavik and Ostrich and proposes that we take judicial notice of the distance between the various locations. The Colaizzis respond that this argument does not acknowledge the circuit court's discussion of the availability and expense of public transportation.

¶ 30    Contrasting a six mile and six minute difference or speculating about the cost of using public transportation versus a private vehicle is precisely the "frustrating litigation quagmire" and

" 'battle over minutiae' " that the supreme court cautioned against in *Guerine*, 198 Ill. 2d at 519 (citing and quoting *Peile*, 163 Ill. 2d at 335). "This is especially true when adjoining counties are involved, where the travel distances for likely witnesses are minimally different." *Wilton v. Illini Manors, Inc.*, 364 Ill. App. 3d 704, 706-07 (2006). There is no appreciable difference in time or cost of obtaining the attendance of witnesses. The circuit court reasonably found that the factor did not favor transfer.

¶ 31   For Eyes also argued that the possibility of viewing the premises was erroneously given no weight. However, our supreme court determined that "the necessity or propriety of viewing the scene is a decision left within the discretion of the trial court." *Dawdy*, 207 Ill. 2d at 179. In its discretion, the trial judge addressing For Eyes' motion found that "[t]here is no benefit of viewing the location of where an allegedly negligent examination and treatment took place." The court acknowledged that it was proper to weigh a possible jury viewing, but that this factor commands little weight and, in this instance, did not weigh in favor of transfer. See *Hackl v. Advocate Health and Hospitals Corp.*, 382 Ill. App. 3d 442, 452 (2008) ("a viewing of the site is rarely or never called for in a medical negligence case" and this factor alone would be an insufficient reason to transfer); *Bruce v. Atadero*, 405 Ill. App. 3d 318, 326 (2010) (following *Hackl*); *Richardson v. Husain*, 2025 IL App (5th) 240916, ¶ 45 ("this private interest factor is relatively insignificant and is neutral); *O'Brien v. Advanced Urology Associates, S.C.*, 2026 IL App (1st) 250608-U, ¶ 49 (approving the circuit court's determination that this private interest factor is of " 'relatively low' " importance); *Ceresa v. PD Derm, Ltd.*, 2026 IL App (1st) 250578-U, ¶ 26 (same). Neither the facts nor law support For Eyes' contention that this factor strongly favors transfer. We find no error in the court's analysis or its reasonable conclusion.

¶ 32    Proceeding to the public interest factors, we address two of the three together: the interest in deciding localized controversies locally and the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a county with little connection to the litigation.

¶ 33    For Eyes contends that although Joshua's ongoing medical treatment will occur in Cook County, this is at core a DuPage County controversy because the injury occurred there. It emphasizes that when he was injured, For Eyes was a Pennsylvania corporation, and that Luxottica would not acquire For Eyes until three years later.

¶ 34    The circuit court determined that these were additional factors that did not weigh in favor of transfer. It reasoned that both counties have an interest in the matter. The alleged negligent treatment occurred in DuPage County and DuPage County residents have a direct interest in medical care rendered within their community. Comparatively, Cook County and its residents also have an interest in this matter given the numerous businesses that Luxottica of America, Inc. maintains in Cook County. Further, given Cook County's genuine interest in this case, the county's residents and the greater Chicago area can reasonably be expected to bear the burden of jury duty, particularly in light of the significant presence and saturation of Luxottica businesses in this forum. This was a reasonable conclusion.

¶ 35    Another relevant factor was the courts' congestion. Courts are generally concerned with "protecting finite judicial resources" and the efficient functioning of their judicial systems. *Espinosa*, 86 Ill. 2d at 121. Nevertheless, the supreme court has repeatedly indicated that the "court congestion factor, by itself, is relatively insignificant" and is not sufficient to justify transfer of venue alone. *Dawdy*, 207 Ill. 2d at 181; *Guerine*, 198 Ill. 2d at 517 ("congestion is a relatively insignificant factor, especially where the record does not show the other forum would resolve the

case more quickly"); *Kwasniewski v. Schaid*, 153 Ill. 2d 550, 555 (1992) (court congestion is the least significant of the public interest factors); *Brumett v. Wepfer Marine, Inc.*, 111 Ill. 2d 495, 503 (1986) ("Courts should be extremely reluctant to dismiss a case from the *forum rei gestae* merely because that forum's docket has a backlog.").

¶ 36    The annual report of the Administrative Office of the Illinois Courts is a proper source of information when assessing court congestion. *Dawdy*, 207 Ill. 2d at 181; *Washington v. Illinois Power Co.*, 144 Ill. 2d 395, 403 (1991).

¶ 37    The parties disagree on which year's report, and which statistics are most relevant. For Eyes gave the circuit court pages of the 2023 annual report that included the "Beginning Open" and "Ending Open" case figures for the year. The Colaizzis responded with the 2023 statistics about the number of cases filed per judge. For Eyes now contends we should consult a part of the 2024 annual report that can be found on the Administrative Office's website. A court of review may not consider documents that are not part of the certified record on appeal. *Hartz Construction Co., Inc. v. Village of Western Springs*, 2012 IL App (1st) 103108, ¶ 50. By using new statistics, For Eyes is essentially arguing that we should reverse the circuit court's judgment based on statistics that were not available when the court ruled.

¶ 38    In *Evans*, the court considered that Cook County was much more efficient at disposing of cases like this one, law jury cases with a value over $50,000. *Evans*, 2020 IL App (1st) 200528, ¶ 22. In *Seilheimer*, the court reversed a transfer after criticizing the circuit court for relying on the fact that Cook County had more cases pending than the alternate forum of Lake County. *Seilheimer*, 2025 IL App (1st) 240418, ¶¶ 65-66. The proper consideration was not gross numbers of cases alone but rather "the efficiency with which the court handles those cases." *Id*. ¶ 67. See

*Brummett*, 111 Ill. 2d at 503; *Petrungaro v. Jayachandran*, 2022 IL App (1st) 220304, ¶ 35 (evaluating congestion by looking at speed of disposition); and *Prouty v. Advocate Health & Hospitals Corp.*, 348 Ill. App. 3d 490, 497-98 (2004) (same). Similarly, in *Kashirsky*, the court said that although Cook County had significantly more total cases than the alternative forum of Will County, it also had far more judges and consequently disposed of cases more quickly. *Kashirsky v. Presence Central & Suburban Hospitals Network*, 2024 IL App (1st) 230060-U, ¶ 13.

¶ 39 This authority indicates that the circuit court relied on the relevant information. The circuit court consulted the 2021 annual report, noting that it was the last report to provide numerical data for Cook County. Cook County terminated 47 cases by verdict, with an average lapse time of 43.4 months, while DuPage County terminated 19 cases by verdict, with an average lapse time of 59.3 months. Thus, Cook County terminated 28 more cases by verdict in 15.9 fewer months than DuPage County. The circuit court concluded that proceeding in Cook County was nearly a year and a half faster and that since Cook County is less congested than DuPage County, this factor also did not weigh in favor of transfer. This was a reasonable conclusion to make.

¶ 40 The record shows that the circuit court considered the totality of the circumstances and carefully balanced the relevant factors. We give the decision the deference that it is owed and are mindful that transferring a plaintiff's action on the basis of *forum non conveniens* is warranted only in "*exceptional circumstances*." (Emphasis in original.) *Langenhorst,* 219 Ill. 2d at 442. In our opinion, a reasonable person could adopt the view of the circuit court. Accordingly, we find that the court did not abuse its discretion when it denied For Eyes' motion to transfer. For these reasons, we affirm the judgment.

¶ 41 Affirmed.